# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JOHN JOSEPH STEELE,

    Plaintiff,

v.                                            CASE NO: 8:14-cv-647-T-26MAP
                                                  (8:11-cr-438-T-26MAP)

UNITED STATES OF AMERICA,

    Defendant.
_____/

## O R D E R

Plaintiff, proceeding *pro se*, has filed a timely motion to vacate his sentence pursuant to 28 U.S.C. § 2255 with supporting memoranda of law. The Government was ordered to file a response and the Plaintiff a reply, which are now before this Court. After reviewing the motion, response, reply, and the record of the prior criminal proceedings,[1] as required by Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court concludes that the motion is due to be summarily denied. There is no need for an evidentiary hearing because it plainly appears from the face of the

---

[1] See 8:11-cr-438-T-26MAP.

motion, the attachments to the response,[2] and the underlying criminal proceedings that Plaintiff is entitled to no relief.[3]

## BACKGROUND

Plaintiff was indicted for and convicted of attempting to persuade, induce, entice, and coerce a minor to engage in a sexual act through the use of a telephone, computer, and modem. An undercover sting called Operation Summer Nights was running in Clairmont, Lake County, Florida, in June 2011. The maneuver targeted suspects who contacted children, or the parents or guardians of those children, for sex with those children.

On June 18, 2011, a detective, identified as Lisa Calderone, advertised "beautiful niece and fun times" on the Craig's List website at 7:50 p.m. Within two hours of the post, Plaintiff responded to the ad by e-mail, requesting that the author of the ad call him. The detective, posing as Lisa, obliged and called him just before 10:00 p.m. that same day. On the telephone call, she told Plaintiff that her niece, Summer, was 13 years old.

---

[2] An affidavit of trial counsel and Rule 16 disclosures from the Government are attached to the response. This Court may rely on affidavits otherwise corroborated by the record. See Owens v. United States, 551 F.2d 1053, 1054 (5th Cir. 1977). In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

[3] See Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (negating the need for evidentiary hearing on § 2255 petition where petitioner's allegations are affirmatively contradicted by the record or patently frivolous, or assuming the facts as true would not entitle him to relief).

Plaintiff responded that Summer was just a baby and that he could go to jail if she was part of a sting operation. When Lisa told him there was no need to keep talking because he was not interested, Plaintiff asked her not to hang up. Lisa and Plaintiff continued to talk while Plaintiff started the drive from Wesley Chapel to Lake County. Over the course of four telephone calls, Lisa asked what Plaintiff would be interested in doing with Summer, and Plaintiff stated "just normal sex." When Lisa asked how Plaintiff would prevent her niece from getting pregnant, Plaintiff responded that he would bring protection. Plaintiff was arrested that night after he arrived at the house in Lake County. Condoms were found in his car and wallet.

    Plaintiff's defense was that he drove to the house to prevent an adult from exploiting a child. He explained possession of the condoms as wishful thinking for the seduction of an adult he met for the first time at TGI Fridays in Temple Terrace earlier that evening. When his date prematurely ended, Lisa's response to his answer to the Craig's List ad was waiting in his email. The ad had been placed under "women for male" and indicated that Lisa was 40 years olds. When he learned from Lisa that Summer was a child, he intentionally secured the address to rescue the child. He did not actually speak to anyone posing as a 13-year-old over the telephone.

    After a jury found Plaintiff guilty as charged, the Court sentenced him to 120 months in prison followed by 10 years of supervised release. Plaintiff's direct appeal to the Eleventh Circuit Court of Appeals resulted in an affirmance of his sentence. He now

seeks relief under § 2255, raising ineffective assistance of trial counsel and the Government's failure to produce an outdoor surveillance videotape of the events at the house in Lake County.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Plaintiff's claims of ineffective assistance of counsel are governed by the two-part standard established in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Eleventh Circuit has explained the test as requiring the petitioner to "show both incompetence and prejudice: (1) he must show that 'counsel's representation fell below an objective standard of reasonableness,' and (2) he must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Kokal v. Sec'y, Dept. of Corrs.</u>, 623 F.3d 1331, 1344 (11th Cir. 2010) (citing and quoting <u>Strickland</u>, 466 U.S. at 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674). The Court is not required, however, to consider them in any order, and if prejudice against the Plaintiff is determined, then the adequacy of counsel's performance need not be measured. <u>Kokal</u>, 623 F.3d at 1344-45. Applying these principles, the Court addresses each of Plaintiff's grounds for ineffective assistance of counsel.

Of the numerous grounds for ineffective assistance of counsel, Plaintiff first alleges that his trial counsel's failure to review photographs of child and adult pornography retrieved from his laptop computer deprived him of an alternative defense

theory. Trial counsel avers in his affidavit attached to the Government's response that he did in fact review some, but not all, of the photographs. Notwithstanding that he did not review each photograph, he successfully argued at trial that the Government had no expert to prove that any of the photographs depicted underage children. The Court excluded the photographs and therefore it is irrelevant what, if any, theories of defense other than his desire to rescue the child could have been employed. Neither prejudice through the loss of some unknown defense nor any deficient performance by failing to view all the photographs has been shown.

Plaintiff next argues that trial counsel was remiss in failing to fully investigate and apply the defense of impotence and the defense of "atypical use of both alcohol and marijuana." Plaintiff claims the drug-induced impairment resulted in Plaintiff's "conflicting inculpatory statements" to law enforcement without an explanation. Any drug or alcohol use even remotely playing a role in his defense, is nonsensical. Having testified that he engaged Lisa in talking, only to keep the child at the house in Lake County, and traveled almost 80 miles to save the child from exploitation, Plaintiff cannot now rely on some type of intoxication defense. With respect to his alleged erectile dysfunction, the physical ability to follow through with the actual sexual act is not an element of the crime.[4] The crime consists of using the internet with the intent to

---

[4] See United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004) ("The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act

persuade, induce, entice, or coerce a minor to engage in a sexual act, not the commission of the actual sexual act itself.  Having traveled all the way to Lake County armed with condoms seems to undercut the notion that Plaintiff suffered any physical incapability to perform the sexual act.  Given the "rescue" defense to which Plaintiff testified, the introduction of his "conditions"– drug usage or erectile dysfunction– would not have made him more credible.  Carrying condoms would be totally unnecessary, and deciding to rescue the minor would be no more believable if his judgment was impaired by intoxicants.  Neither prejudice nor deficient performance have been shown.[5]

Plaintiff takes issue with trial counsel's lack of preparation and strategy decisions with respect to failing to offer evidence of Plaintiff's good character.  Plaintiff provided the names of relatives, a paramour, and friends, but after Plaintiff testified, trial counsel placed only his wife on the stand at trial.[6]  The others ultimately spoke at his sentencing. Plaintiff seems to suggest that by presenting reputation evidence that he loved children, it would have been clear to the jury that he could not have been sexually interested in a

---

itself. That is, if a person *persuaded* a minor to engage in sexual conduct (e.g. with himself or a third party), without then actually committing any sex act himself, he would nevertheless violate § 2422(b)." (footnotes omitted) (emphasis in original).

[5]  With respect to Plaintiff's contention that trial counsel failed to attack his post-arrest statements that he drove to rescue the child, it is obvious that the existence of his asserted medical condition would have had no bearing on his exculpatory statement.  That his statement was exculpatory – driving to rescue the child– placed no burden on trial counsel to challenge the statements.

[6]  Plaintiff's wife testified that they had an open marriage so that he could "date" other women.  See docket 80, Trial Tr. at 247 in case no. 8:11-cr-438-T-26MAP.

child, because he would have acted in conformity with that trait on the date of the offense. While it is generally true that evidence of a person's character or character trait is not admissible to show that the person acted in conformity with that trait with respect to the offense at issue, an exception exists for a defendant in a criminal case. See Fed.R.Evid. 404(a)(2)(A).[7] To be admissible, however, character evidence must be introduced in the form of opinion or reputation. See Fed.R.Evid. 405(a).[8] By Plaintiff's own allegations, he could not give trial counsel the names of any organizations or groups in the community with members who could testify to his reputation, much less his reputation for having sex with adult women as opposed to children. The witnesses who testified at sentencing simply expressed their personal belief that he could not have committed the crime. The affidavits of the alleged character witnesses,[9] which were submitted by Plaintiff in an attempt to supplement this record in these postconviction proceedings, also attest to their strong affection for Plaintiff and their belief that he could not have committed the

---

[7] Rule 404 provides the following exception for a defendant in a criminal case:
(A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]
Fed.R.Evid. 404(a)(2)(A).

[8] See United States v. White, 737 F.3d 1121, 1137 (7th Cir. 2013) (noting that Rule 404(a)(2) lists exceptions to general prohibition against the use of character evidence, including exception of defendant in a criminal case, subject to limitations of Rule 405 regarding admissibility of character evidence); Government of Virgin Islands v. Grant, 775 F.2d 508, 511 (3rd Cir. 1985) (same).

[9] See docket 4, Exh. 1.

indicted offense. Nothing in the affidavits, or the information provided for sentencing, rises to the level of opinion evidence of the specific character trait as required by Rule 405. Even assuming Plaintiff had provided trial counsel with character witnesses, and assuming those character witnesses had testified, the probative value and unfair prejudice would have been weighed under Rule 403 for admissibility,[10] and the Government would have had the opportunity to offer evidence in rebuttal.[11] Plaintiff cannot show that he offered to counsel the appropriate character witnesses, or that they existed, and consequently cannot show that the outcome of the trial would have been different had any character witnesses testified at the trial.

Plaintiff's allegation that trial counsel failed to hire medical and forensics experts because they were too expensive is refuted by the record, and is facially insufficient. Trial counsel hired a forensic computer expert, Doug Rehman, to contest the Government's evidence of child pornography found on Plaintiff's laptop computer. At trial, the evidence of all pornography was excluded, and therefore no prejudice can be

---

[10] See United States v. Harris, 491 F.3d 440, 447 (D.C.Cir. 2007) (noting in the context of evidentiary rulings that Rule 403 is applied to character evidence of Rule 404(a)).

[11] See McClure v. Wilson, 2002 WL 32348503, at *6 (E.D. Pa. May 21, 2002) (noting in the context of a claim for ineffective assistance of counsel for failing to call the defendant to testify in his criminal trial, defendant would have been subjected to broader cross-examination on the issue of his sexual relationships in rebuttal to the character witnesses' testimony for defendant's reputation of chasteness). Had character witnesses been available and testified in this case, the Government would have had a much better argument for using the alleged child pornography on Plaintiff's laptop computer in his cross-examination.

asserted with respect to the one expert hired.  As to any other experts needed, Plaintiff fails to allege what, if any, element of the offense required an expert to defend.  This claim falls far short of alleging any ineffective assistance of counsel under either part of the Strickland test.

Plaintiff's allegation that the sidebar conference was audible by the jury despite the white noise emanating from the courtroom's microphone system is insufficient.  The record reveals that Plaintiff's trial counsel stated on the record that he thought the jury could hear the judge.[12]  There is no indication from the record that the microphone at the side bar was audible over the white noise piped through the speakers directed toward the jury, which is a routine procedure in trial proceedings.  Any allegation that trial counsel should have moved for a mistrial after stating that he thought the jury might be able to overhear parts of the discussion about images on the laptop computer is refuted by the record.

Plaintiff also claims that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel in the direct appeal and for failing to argue prosecutorial misconduct and due process issues.  Claims of ineffective assistance of counsel may generally not be raised on direct appeal, absent applicability of very narrow exceptions which are inapplicable in this case.  See United States v. Dickerson, 2014 WL 2180269, at *3 (11th Cir. May 27, 2014) (unpublished opinion) (holding that claims of

---

[12] See docket 80, Trial Tr. at 242-43 in case no. 8:11-cr-438-T-26MAP.

ineffective assistance of counsel are generally not raised on direct appeals because the district court did not entertain the claim first and the record is not sufficiently developed). With respect to the failure to raise prosecutorial misconduct and due process violations on appeal, Plaintiff has failed to articulate any basis for arguing either of those two grounds on direct appeal.

To the extent Plaintiff raises grounds directed toward the Government's failure to insure a fair trial, all are facially insufficient and refuted by the record. The videotape of Plaintiff's arrival at the house in Lake County was disclosed in discovery as evidenced by the Rule 16 disclosures attached to the response. To the extent Plaintiff is asserting ineffective assistance of counsel for failing to properly object to any reference to the videotape, Plaintiff has failed to show any prejudice.

Finally, Plaintiff claims that trial counsel failed to investigate Plaintiff's own medical records revealing his impotence. He suggests that trial counsel should have known that he could not physically have sex. According to trial counsel, he reviewed the medical records, which did not conclusively establish that Plaintiff was in fact impotent. In any event, this new defense strategy of Plaintiff's is belied by Plaintiff's own testimony that he had an open marriage so that he could have sex with adult women and he took condoms with him to Lake County. Plaintiff has failed to meet either part of the <u>Strickland</u> test.

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 1) is **DENIED**. The clerk is directed to enter judgment for Defendant, to terminate all deadlines and pending motions, and to **CLOSE** this case.

Additionally, the Court declines to issue a certificate of appealability because Plaintiff has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court permit Plaintiff to proceed on appeal *in forma pauperis* because such an appeal would not be taken in good faith. See 28 U.S.C. § 1951(a)(3). Instead, Plaintiff will be required to pay the full amount of the appellate filing fee pursuant to §§ 1951(b)(1) and (2).

**DONE AND ORDERED** at Tampa, Florida, on August 6, 2014.

    s/*Richard A. Lazzara*
    **RICHARD A. LAZZARA**
    **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Plaintiff, *pro se*